## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

TRAI NGOC NGUYEN,

        *Plaintiff*,                        **Civil Action No. 25-3339**

v.                                   **<u>VERIFIED COMPLAINT</u>**

D.S. ERICKSON & ASSOCIATES, PLLC,      **<u>JURY TRIAL DEMANDED</u>**

        *Defendant.*

For his Verified Complaint against Defendant D.S. Erickson & Associates, PLLC ("**D.S. Erickson**" or the "**Firm**"), a Minnesota professional limited liability company, Plaintiff Trai Ngoc Nguyen, an individual, through undersigned counsel, states and alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.     This action arises under the Fair Debt Collection Practices Act, as amended, §§ 801 – 819, 15 U.S.C. §§ 1692 – 1692p ("**FDCPA**"); its implementing regulation, 12 C.F.R. Part 1006 (*DEBT COLLECTION PRACTICES (REGULATION F)*) ("**Regulation F**" or "**Reg. F**"); Minnesota's unauthorized practice of law (UPL) statute, Minn. Stat. § 481.02; and Minnesota's mini-FDCPA, Minn. Stat. § 332.37.

### <u>JURISDICTION AND VENUE</u>

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and is authorized pursuant to FDCPA § 813(d).[1]

3.     Venue is proper in this judicial district, wherein alleged acts and transactions occurred; Plaintiff resides; and Defendant operates, transacts business, and is located.

---

[1] 15 U.S.C. § 1692k(d).

## PARTIES

4.    Plaintiff Trai Nguyen is a natural person residing in the City of Shoreview, County of Ramsey, State of Minnesota, and is a "consumer" within the meaning of FDCPA § 803(3).[2]

5.    Defendant D.S. Erickson—a Minnesota professional limited liability company— is a law firm-cum-collection agency operating from an address of 7650 Edinborough Way, Suite 500, Edina, Minnesota 55435–6005, and is a "debt collector" within the meaning of FDCPA § 803(6).[3] According to the Minnesota Secretary of State, D.S. Erickson's registered address is the same as its business address, *supra*, and it employs no registered agent ("Currently No Agent"). *Minnesota Secretary of State Business Records*, **Exhibit A**, at A-3.

## FACTUAL ALLEGATIONS

### *Background*

6.    D.S. Erickson alleges Plaintiff incurred a financial obligation primarily for personal, family, or household purposes—a "debt" within the meaning of FDCPA § 803(5)[4]— owed Fairview Health Services ("**Fairview**"), a Minnesota nonprofit corporation, in connection with medical goods and services Fairview rendered Mr. Nguyen's minor child, in an approximate amount of $4,800 plus costs. *State Court Record*, **Exhibit B**, at A-13.[5]

### *Defendant Not a Debt Buyer*

7.    Upon information and belief, D.S. Erickson is not acting as a debt buyer and maintains no direct ownership interest in the debt it alleges Mr. Nguyen owes. See, e.g., Minn.

---

[2] § l692a(3).
[3] § 1692a(6).
[4] § 1692a(5).
[5] *See generally* Paragraph 8, *infra*.

Stat. § 548.101, titled *ASSIGNED CONSUMER DEBT DEFAULT JUDGMENTS*.

### *Minnesota State Court Collection Lawsuit Allegedly Served August 21, 2024*

8.     **Putative service of summons and complaint; inaccurate Certification of Expert Review**. On or about Wednesday, August 21, 2024, on information and belief, through its agent for service of process ("**Process Server**"), D.S. Erickson, acting as counsel for Fairview, purported to serve a civil summons and complaint ("**S&C**"), *State Court Record*, **Exhibit B**,  at A-10 to A-16, upon Plaintiff at Plaintiff's home in Shoreview, Minnesota, ostensibly signed illegibly and hurriedly by the Firm's founder and namesake D. Scott Erickson, *D.S. Erickson Website*, **Exhibit C**, at A-58, an attorney licensed to practice law in the State of Minnesota and, upon information in belief, in the employ of the Firm. Thus began the "**State Court Litigation**."[6] Fairview failed to comply with the statutory requirements of Minn. Stat. § 144.588 (*Certification of Expert Review*) insofar as, *inter alia*, the assertion of its affidavit that "[n]either Patient/Guarantor(s) nor Patient's/Guarantor's attorney has responded to Law Firm," *State Court Record*, **Exhibit B**, at A-15 (Compl. Ex. A.), is, upon information and belief, untrue.[7]

9.     **False affidavit of service**. Fairview then filed with the state court an affidavit of service ("**AoS**"), *State Court Record*, **Exhibit B**, at A-17. Unfortunately, the AoS falsely asserts the affiant—one Nora Christensen, of unknown corporate affiliation—effectuated service "by handing to and leaving with an individual by the name of Dale G. Pearson, a person of suitable age and discretion residing there in." *Ibid.* This is so because Mr. Pearson—Mr. Nguyen's

---

[6] This terminology notwithstanding, Mr. Nguyen continues to maintain the position that the State Court Proceedings never properly began. *See, e.g.*, Paragraph 14, *infra* (Mr. Nguyen properly raised appropriate affirmative defenses).

[7] *State Court Record*, **Exhibit B**, at A-51 (*Eighth Affirmative Defense*).

adoptive father—has not resided with Trai for many years. Affiant had no reasonable basis to conclude Mr. Pearson resided at Trai's home address, nor did Mr. Pearson represent this to her.

10.    **Fairview moves for summary judgment**. On Friday, March 28, 2025, Fairview filed a motion for summary judgment ("**MSJ**"), set for hearing Monday, April 28, 2025. *See generally State Court Record*, **Exhibit B**, at A-22 to A-47.

11.    **Appearance of the undersigned for state-court defendant Mr. Nguyen**. Mr. Nguyen retained the undersigned after receiving notice of the MSJ, and the parties executed a fee agreement dated Wednesday, April 16, 2025.

12.    **Stalled settlement negotiations**. The parties entered into negotiations regarding settlement of the State Court Litigation involving financial payment by Mr. Nguyen. Next day— Thursday, April 17, 2025— Mr. Cobb emailed Gregory E. Hanson, *Emails*, **Exhibit D**, at A-60, whose name appears in the signature block of the S&C, advising him of the insufficiency of service of process. Later that day, Mr. Cobb telephoned the Firm and spoke with Vini Nechalob, a paralegal. Mr. Cobb recorded this telephone conversation, but has not attached the audio. Mr. Nechalob falsely asserted Trai "did send us a proper answer." On Monday, April 21, 2025, Messrs. Cobb and Venjohn exchanged emails in which Mr. Venjohn included an attachment he falsely asserted constituted the "Answer that was provided by Defendant," *Emails*, **Exhibit D**, at A-61 to A-63, and Mr. Cobb objected, *Emails*, **Exhibit D**, at A-64 ("uncertain whether this qualifies as an answer"). Notwithstanding these concerns and defects, Mr. Nguyen was inclined to consider the convenience of settlement and avoidance of litigation. Accordingly, he remitted partial payment to Fairview pending execution of settlement paperwork, albeit, upon information and belief, outside the time limitation to which the parties had earlier agreed (i.e., outside the terms of proposed settlement). Plaintiff's counsel D.S. Erickson then emailed Mr. Cobb a

proposed stipulation for dismissal ("**Proposed Stipulation for Dismissal**"), *Proposed Stipulation for Dismissal*, **Exhibit E**, at A-67 to A-69, which Mr. Cobb found problematic, advising Mr. Nguyen not to execute it, as it would likely bind Mr. Nguyen to false statements of fact or law and thereby possibly preclude an FDCPA action. Accordingly, on Friday, April 25, 2025, Mr. Cobb emailed Mr. Venjohn to express concerns, *Emails*, **Exhibit D**, at A-66.

13.    **The Proposed Stipulation for Dismissal contains false statements of fact or law**. As Mr. Cobb noted in his April 25, 2025, email to Mr. Venjohn, *Emails*, **Exhibit D**, at A-66, the Proposed Stipulation for Dismissal was problematic insofar as it falsely asserted **(a)** Fairview had served Mr. Nguyen with the S&C—contravening Mr. Cobb's assertion of insufficiency of service of process—and **(b)** Mr. Nguyen's undated email constituted an answer within the meaning of the Minnesota Rules of Civil Procedure. *Proposed Stipulation for Dismissal*, **Exhibit E**, at A-68 ¶¶ 1, 3.

14.    **Hearing on MSJ: state-court judge grants Mr. Nguyen leave to file an answer; Mr. Nguyen so files**. The undersigned appeared at the scheduled MSJ hearing on Monday, April 28, 2025. During the hearing, despite Mr. Cobb's ample prior notice to the Firm, to the best of Mr. Cobb's recollection, Mr. Venjohn failed to correct the record regarding insufficiency of service of process and continued to assert Trai's undated email constituted an answer, but Ramsey County District Court Judge Leonardo Castro, presiding, granted Mr. Nguyen leave to file an answer, which he did Friday, May 23, 2025, serving the same upon Fairview through the Firm via the Minnesota Judicial Branch's trial court eFile and eServe (eFS) system. *State Court Record*, **Exhibit B**, at A-48 to A-54. The answer raises among its affirmative defenses insufficiency of service of process. *Id.* at A-51 (*Seventh Affirmative Defense*).

15.    The Firm's aforementioned conduct and S&C violated, *inter alia*, the FDCPA.

16.    *First*, the S&C omits direct telephone numbers and email addresses in violation of Minn. R. Civ. P. 11.01 (hereinafter, and with respect to other of the Minnesota Rules of Civil Procedure, "**Rule**" 11.01) (requiring "***the signer's*** address and telephone number and e-mail address") (emphasis added). The S&C lists only a general phone number, rather than each attorney's direct line, and lists no email address for any attorney.[8]

17.    *Second*, the S&C omits case type, in violation of Rule 10.01.

18.    *Third*, the S&C—in addition to reliance upon hip-pocket service, which tends to confuse unsophisticated consumers,[9] who often not recognize it as the beginning of a legitimate lawsuit to which they must respond—*in toto*, appears to deliberately obfuscate its signatories' contact information as a means to generally impede communication and hinder or delay answering suits directed at unsophisticated consumer debtor-defendants—a strategy likely calculated to improve the likelihood of obtaining default judgments, which attach to real property and can thereby become bankruptcy-proof.

19.    *Fourth*, the S&C is oddly missing many standard headings, including nature of the action, jurisdiction and venue, parties, factual allegations, claims for relief, and prayer for relief, and contains little more information than a dunning letter. It does not strike the undersigned as having been drafted or reviewed with care by any attorney—let alone Mr. Erickson himself, *supra* Paragraph 8, raising the specter of robo-signing in violation of, *inter alia*, Rule 11, Minn. Stat. § 549.211, and the FDCPA. *See infra* Paragraphs 41 – 43.

---

[8] Should the Court wish to take judicial notice, the Firm's Website also omits this information. See *Home* (*D.S. Erickson & Associates*).

[9] "We evaluate debt collection communications from the perspective of an unsophisticated consumer. *Duffy v. Landberg*, 215 F.3d 871, 873 (8th Cir. 2000)." *Klein v. Affiliated Grp., Inc.*, 994 F.3d 913, 917 (8th Cir. 2021).

20.     *Fifth*, the Firm filed a false Certification of Expert Review.[10]

21.     *Sixth*, the Firm filed a false AoS and ratified it numerous times, even after it had actual notice as to its inaccuracy. To wit, D.S. Erickson **(a)** filed the AoS to the court's docket (subject to Rule 11),[11] **(b)** ratified the AoS in its MSJ,[12] and **(c)** to date, ***has never updated, amended, or withdrawn the AoS***, even after it learned of its incorrectness by way of Mr. Cobb's emails[13] and the Answer.[14] That is, the Firm continued to press suit without advising the state court of insufficiency of service of process or that it was asserting—speciously—Trai's undated email constituted an answer to the S&C.

22.     *Seventh*, the Firm repeatedly falsely asserted Trai had filed an answer,[15] which it, notably, did not file onto the state court's docket or assert in any pleadings or other written court documents constituted an answer, ostensibly in bad faith as a means to foreclose Trai's assertion of any affirmative defenses, such as insufficiency of service of process.

23.     *Eighth*, the Firm made at least two misrepresentations of fact or law in the Proposed Stipulation for Dismissal, evincing, it is Mr. Nguyen's position, consciousness of guilt, seeking to cleanse its past wrongs by sneaking assertions into a stipulation for dismissal, attempting to bait Mr. Nguyen into waiving FDCPA claims regarding its conduct in the state court action.

---

[10] *See supra* note 7 and accompanying text.

[11] *State Court Record*, **Exhibit B**, at A-17.

[12] *State Court Record*, **Exhibit B**, at A-28 (Mem. Law Supp. Mot. Summ. J. ¶ 10 & *Statement of the Documents Which Comprise the Record*), A-44 (Venjohn Aff. ¶ 3), A-45 (Proposed Order, *Findings of Fact* ¶ 3 ("costs of service").

[13] *See generally* Paragraph 12, *supra*.

[14] *State Court Record*, **Exhibit B**, at A-51 (*Seventh Affirmative Defense*).

[15] *See* Paragraph 12, *supra* (discussing Mr. Nechalob's verbal representation and Mr. Venjohn's email).

24.    *Ninth*, as illustrated by the affirmative defenses Mr. Nguyen asserted in his state-court answer, *State Court Record*, **Exhibit B**, at A-50 to A-52, the S&C and conduct of the Firm may be viewed, *in toto*, as false, misleading, or unfair, in contravention of the FDCPA.

### D.S. Erickson's Pattern of Obfuscation of Contact Information

25.    According to the research of undersigned counsel, D.S. Erickson does not, either via its Website or in connection with its litigative practices, provide attorney direct-dial telephone (or mobile) numbers or disclose attorney email addresses. Although the FDCPA concerns itself with a consumer's privacy, in pursuit of state-court default judgments, collector-plaintiffs are incentivized to hide their contact information.

### D.S. Erickson Has to Date Remained Entirely Incommunicado and Appears to Have Abandoned Its State Court Action

26.    Since filing the state-court answer, undersigned counsel has never heard—not once—from the Firm or any representative of Fairview or the Firm: no one has once communicated with Mr. Cobb in any capacity or for any reason or by any means, whether in connection with the state court action or for any other reason. Nor has the Firm since that time formally filed any paperwork through the Minnesota district court's eFile and eServe (eFS) system or taken any other step in furtherance of its state-court action. It is as if the Firm has fallen off the face of the Earth. This in no wise is what counsel does when prosecuting a legitimate suit in good faith on the merits.

## PRELIMINARY MATTERS

### *The FDCPA Applies to Debt Collection Litigation, Though Formal Pleadings Are Exempt from Certain Notice Requirements*

27.    It is hornbook law that the FDCPA applies to all litigation activity,[16] though pleadings are generally exempt from validation[17] and—by rule[18]—the notice requirements of FDCPA § 807(11)[19] (the mini-Miranda).

28.    The S&C and other litigation documents are "communications" within the meaning of FDCPA § 803(a)(2).[20]

### *Article III Standing and Subject-Matter Jurisdiction*

**I.    *Spokeo* Does Not Vitiate Standing.**

29.    The Eighth Circuit recently explained *Spokeo*:

Standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts— such as physical harm, monetary harm, or various intangible harms. . . . The [Supreme] Court has rejected the proposition that a plaintiff automatically

---

[16] *See, e.g.*, *Miljkovic v. Shafritz and Dinkin, P.A.*, 791 F.3d 1291, 1298 (11th Cir. 2015) ("[T]he Supreme Court expressly held that the FDCPA applies to the litigating activities of [debt-collector] lawyers[,]" *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)) (internal quotations omitted); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 696 (8th Cir. 2017) ("The Act does apply to lawyers engaged in litigation.").

[17] "A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a)." FDCPA § 809(d), 15 U.S.C. § 1692g(d).

[18] "Disclosures under paragraphs (e)(1) and (2) of this section are not required in a formal pleading made in connection with a legal action." 12 C.F.R. § 1006.18(e)(4). (Paragraph (e)(1) codifies the mini-Miranda, and, under subparagraph (e)(2), "the debt collector must disclose that the communication is from a debt collector.")

[19] 15 U.S.C. § 1692e(11).

[20] § 1692a(2).

satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation.

*Bassett v. Credit Bureau Servs.,* 60 F.4th 1132, 1134 – 35 (8th Cir. 2023) (cleaned up).

A.    **Concrete Injuries-in-Fact: Specific Harm Plaintiff Suffered.**

30.    **Monetary loss**. Plaintiff incurred increased attorney's fees in defending against the State Court Litigation vis-à-vis a scenario in which no FDCPA violation inheres, as defense counsel must identify, analyze, and address defenses related to FDCPA violations before filing an answer or other responsive pleading or motion.

31.    **Emotional distress**. Plaintiff suffered fear, embarrassment, confusion, wasted time, annoyance, and emotional distress as a direct result of the FDCPA violations described herein.

B.    **The Violations Here at Issue Invoke the Remedial Purposes of the FDCPA.**

32.    The alleged FDCPA violations are substantive—not merely procedural—and strike at the core of the purposes for which Congress enacted the FDCPA and the harms it meant to redress—*viz.*, abusive debt collection practices:

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

\*\*\*

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

FDCPA §§ 802(a), (e).[21]

33.     Creditors who hire lawyers who cut corners and elide ordinary good-faith due diligence and litigation practices undermine public trust in the legal profession and credit markets, increasing the cost of credit or reducing its use. Robo-signing is a particularly nefarious scourge plaguing markets and courts alike. The S&C reads like a stock, bulk form mailing with fill-in data fields that can be printed by the score—flying in the face of careful practices courts encourage. This practice results in unfair litigative advantage inuring to the benefit of creditors, who crank out reams of complaints à la junk mail, while defense counsel must abide by rules of due diligence, conduct "an inquiry reasonable under the circumstances," Minn. Stat. § 549.211, subd. 2, ferret out FDCPA violations, and mount a defense against nebulous claims.

## II.    *Rooker-Feldman* **Does Not Defeat Subject-Matter Jurisdiction.**

34.     *Rooker-Feldman* does not bar the instant FDCPA claims because the state-court proceedings have not been reduced to judgment.[22]

35.     Moreover, since *Exxon,* courts have generally found FDCPA claims to be independent claims, not collateral attacks on the state court action. "Consequently, *Rooker-Feldman* does not bar an FDCPA claim challenging only a defendant's debt-collection practices, without challenging the validity of the state-court judgment." *Ness v. Gurstel Chargo, P.A.*, 933

---

[21] §§ 1692(a), (e).

[22] The Eighth Circuit explains:

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court specifically confined the Rooker-Feldman doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*Caldwell v. DeWoskin*, 831 F.3d 1005, 1008. (8th Cir. 2016)

F. Supp. 2d 1156, 1162 (D. Minn. 2013).[23] This Court elaborated some years ago:

> Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an "independent claim" from a state court action to collect a debt, and Federal courts have jurisdiction over the case.

*Wyles v. Excalibur I, LLC,* No. 05cv-2798 (JRT/JJG), 2006 WL 2583200, at *2 (D. Minn. Sept. 7, 2006).

36.     Here, Plaintiff complains only of the debt-collection practices of D.S. Erickson and does not collaterally attack the state-court proceedings.

### *Respondeat Superior Liability*

37.     The acts or omissions of any person acting as an agent for the Defendant, as principal, whether Defendant classifies or characterizes such agent as an employee or independent contractor, who communicated directly or indirectly with Plaintiff or was involved in handling any aspect of Plaintiff's account with Defendant, were committed within the time and space limits of the agency relationship with Defendant; were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant; and were motivated to benefit Defendant.

38.     Accordingly, Defendant is liable to Plaintiff by operation of the doctrine of respondeat superior for any intentional or negligent acts, errors, or omissions of its agents that give rise to liability of any agent to Plaintiff.

---

[23] *Accord*, *Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016); *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015).

## CAUSES OF ACTION

### COUNT 1
### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA),
### 15 U.S.C. §§ 1692 – 1692p

39.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

### *Inadequate or Missing Contact Information*

40.     The Firm's obfuscating its contact information—email addresses and direct phone numbers[24]—separately and *in toto*, violates Rule 11.01 and—pertinent here—*inter alia*, FDCPA §§ 807 (false or misleading representations),[25] 807(10) (prohibiting "use of any false representation or deceptive means to collect or attempt to collect any debt"),[26] and 808 (prohibiting "unfair . . . means to collect or to attempt to collect any debt").[27]

### *Lack of, or Inadequate, Review and Due Diligence: Robo-Signing & Rent-a-License*

41.     The Virginia Court of Appeals recently opined robo-signing remains a scourge:

> Peter A. Holland, *The One Hundred Billion Dollar Problem in Small Claims Court: Robo-Signing and Lack of Proof in Debt Buyer Cases,* 6 J. Bus. & Tech. L. 259, 268-69 (2011). But even for debt buyers acting in good faith, documentation is only a problem if the debt buyer is in fact forced to prove it owns a debt. "Empirical evidence shows that many debt buyers using a high volume of lawsuits as a component of their recovery strategy rely heavily on the assumption that consumers often fail to show up to contest the case," allowing debt buyers to win default judgments. *Taylor*, 72 N.E.3d at 578-79 (quoting Note, *Improving Relief from Abusive Debt Collection Practices,* 127 Harv. L. Rev. 1447, 1449 (2014)) [hereinafter *Improving Relief*]); *see also id.* at 578 (observing that the debt buying industry is "dependent in large part on the acquiescence, ambivalence, or ignorance of consumers").

*Green v. Portfolio Recovery Associates*, 897 S.E.2d 275, 282 (Va. Ct. App. 2024).

---

[24] *See supra* Paragraphs 16, 25.
[25] § 1692e.
[26] § 1692e(10).
[27] § 1692f.

42.     The *Indiana Law Review* describes rent-a-license schemes:

Lawyer rent-a-license schemes are highly attractive to prospective clients who have basic run-of-the-mill legal issues. Although they are posed as an inexpensive, straightforward and simplified alternative to standard legal practices, these schemes are often fraught with conduct that violates professional conduct rules which results in harm to clients. With largely parallel fact patterns, . . . lawyers [often] partner[] with out of state legal service groups and knowingly utilized non-lawyer assistants to solicit prospective clients, evaluate their legal claims, facilitate the signing of representative agreements and directly handle attorney's fees . . . .[28]

43.     The S&C is devoid of standard sections and does not appear to have been carefully drafted by a lawyer, raising—especially in view of other omissions discussed *supra*—the specter of robo-signing, insufficient involvement of counsel, and eliding due diligence in violation of, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and FDCPA §§ 807 (false or misleading representations),[29] 807(9) ("false impression as to . . . source, authorization, or approval"),[30] 807(10) ("false representation or deceptive means to collect or attempt to collect any debt"),[31] and 808 (unfair practices).[32] *See supra* Paragraphs 16 – 21, 24.

### *False or Misleading Statements*

44.     The State Court Litigation includes numerous false or misleading statements by the Firm, including, *inter alia*, those described in Paragraphs 20 – 23, *supra*, which violate, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and, at least, FDCPA §§ 807(10) ("false representation or deceptive means to collect or attempt to collect any debt")[33] and 808 (unfair

---

[28] G. Michael Witt, *2017 Survey of Indiana Lawyer Discipline Decisions*, 51 Ind. L. Rev. 1181, 1204 (2018), https://mckinneylaw.iu.edu/practice/law-reviews/ilr/pdf/vol51p1181.pdf.

[29] § 1692e.

[30] § 1692e(9).

[31] 15 U.S.C. § 1692e(10).

[32] § 1692f.

[33] § 1692e(10).

practices).[34]

*Improper Purpose*

45.     In view of these numerous violations, and the haphazard and careless way in which the Firm prosecuted its state-court case, Plaintiff believes the S&C was interposed for an improper purpose in derogation of, *inter alia*, Minn. R. Civ. P. 11, Minn. Stat. § 549.211, and, at least, FDCPA §§ 807(5) ("threat to take any action . . . that is not intended to be taken"),[35] 807(10) ("false representation or deceptive means to collect or attempt to collect any debt"),[36] and 808 (unfair practices).[37] *See generally supra* Paragraphs 17, 19 – 21, and 24 (abusively serving ill-prepared and ill-conceived state-court suits, cutting corners in bad-faith pursuit of default judgments against debtors with home equity in debt and at risk of bankruptcy; inaccurate documentation, breezy S&C); 16 and 18 (unusual lengths to which the Firm has gone to hide the contact information of attorneys signing pleadings and legal process); and 22 and 23 (post hoc efforts to paper over its errors).

46.     At bottom, Plaintiff alleges the S&C is little more than a barebones dunning letter, and the Firm initiated the State Court Litigation not for the purpose of litigating the case in good faith on the merits, devoting adequate resources thereto, but as a bargaining ploy to obtain a quick payoff, or for the purpose of obtaining a default judgment while eliding its disclosure and due diligence responsibilities.

47.     Plaintiff further avers the Firm has done this as a matter of course as a pattern of litigation abuse.

---

[34] § 1692f.

[35] § 1692e(5) (i.e., filing the S&C presented a threat of litigation with no intention to follow through).

[36] § 1692e(10).

[37] § 1692f.

### *Violations in Sum*

48.     Because, *inter alia*, Defendant deliberately and improperly obfuscated its contact information in violation of the Minnesota Rules of Civil Procedure; made false statements or filed false or misleading documents; purported to give legal advice when not permitted; and improperly reviewed the S&C and other litigation documents; Defendant violated, *inter alia*, various FDCPA provisions prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt"[38] and "unfair . . . means to collect or to attempt to collect any debt,"[39] including, but not limited to, FDCPA §§ 807, 807(5), 807(9), 807(10), and 808;[40] Minnesota's unauthorized practice of law (UPL) statute, Minn. Stat. § 481.02; and Minnesota's mini-FDCPA, Minn. Stat. § 332.37.

### *No BFE Defense*

49.     It is Plaintiff's position the bona fide error (BFE) defense of FDCPA § 813(c),[41] does not apply, as D.S. Erickson cannot point to "maintenance of [any] procedures reasonably adapted to avoid any such error," *id.*, such as, *inter alia*, the omission of email addresses and provision of a nonspecific, general phone number, issuing false or misleading statements, or filing false or misleading documents.

### *Damages*

50.     The above-referenced acts or omissions of Defendant or its agents are violative of the FDCPA, and Plaintiff is therefore entitled to compensatory damages pursuant to FDCPA §

---

[38] FDCPA § 807, 15 U.S.C. § 1692e.

[39] FDCPA § 808, 15 U.S.C. § 1692f.

[40] 15 U.S.C. §§ 1692e, 1692e(5), 1692e(9), 1692e(10), and 1692f.

[41] § 1692k(c).

813(a)(1),[42] statutory damages not to exceed $1,000.00 pursuant to FDCPA § 813(a)(2)(A),[43] and

costs and a reasonable attorney's fee pursuant to FDCPA § 813(a)(3)[44] and Fed. R. Civ. P. 54.

## COUNT 2
## UNAUTHORIZED PRACTICE OF LAW, MINN. STAT. § 481.02

51.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

52.     Minnesota law proscribes any person, "by word, sign, letter, or advertisement, to

hold out as competent or qualified to give legal advice or counsel." Minn. Stat. § 481.02, subd. 1.

53.     Mr. Vini Nechalob, a paralegal not licensed to practice law, advised Mr. Cobb

during an April 17, 2025, telephone call, Trai "did send us a proper answer." Paragraph 12.

54.     Mr. Nechalob is not a "member[] of the bar of Minnesota admitted and licensed to

practice as attorney[] at law" within the meaning of § 481.02, subd. 1.

55.     This statement does not fall within the purview of permitted actions set forth in §

481.02, subd. 3.

56.     Mr. Nguyen was injured by this misrepresentation, *inter alia*, when the Firm

sought to persuade him he could not file an answer responsive to the S&C, as he had already

filed one, and had thus waived any and all affirmative defenses, having not raised them in the

putative answer. This caused Mr. Nguyen to question his rights and initially consider settlement

and pay the Firm in anticipation thereof, and required Mr. Nguyen to expend money to hire Mr.

Cobb to fend off this allegation, to file an answer dealing with this issue, and to file the case at

bar.

---

[42] 15 U.S.C. § 1692k(a)(1).
[43] § 1692k(a)(2)(A).
[44] § 1692k(a)(3).

57.     Accordingly, pursuant to § 481.02, subd. 8, by operation of Minn. Stat. § 8.31, subd. 3a, Plaintiff is entitled to recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court.

## COUNT 3
## MINNESOTA'S MINI-FDCPA,
## MINN. STAT. § 332.37 (PROHIBITED PRACTICES)

58.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59.     Each and every violation of the FDCPA also derivatively violates Minn. Stat. § 332.37(a)(12) (making it unlawful to "violate any of the provisions of the Fair Debt Collection Practices Act of 1977").

60.     The Firm's obfuscating its contact information and making or filing false or misleading statements or documents, separately and *in toto*, violates Minn. Stat. § 332.37(a)(22) (forbidding a debt collector to "falsify any collection agency documents with the intent to deceive a debtor"), in addition to derivative FDCPA liability under § 332.37(a)(12).

61.     The above-referenced acts or omissions of Defendant or its agents are violative of Minn. Stat. § 332.37, and Plaintiff is therefore entitled to special damages—including compensatory, incidental, and consequential damages—and general damages, to be proven at trial, plus attorney's fees and costs and disbursements, together with pre- and post-judgment interest and all other relief the Court deems just.

## <u>TRIAL BY JURY</u>

Pursuant to U.S. Const. amend. VII and Fed. R. Civ. P. 38, Plaintiff is entitled to, and hereby respectfully demands, a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to enter judgment awarding Plaintiff, with

respect to FDCPA violations, actual damages pursuant to FDCPA § 813(a)(1),[45] statutory

damages of $1,000.00 pursuant to FDCPA § 813(a)(2)(A),[46] costs and a reasonable attorney's fee

pursuant to FDCPA § 813(a)(3)[47] and Fed. R. Civ. P. 54, and such other relief as the Court in its

discretion may provide; and, with respect to state-law violations, avoiding double recovery,

special damages—including compensatory, incidental, and consequential damages—and general

damages, to be proven at trial, plus attorney's fees and costs and disbursements, together with

pre- and post-judgment interest and all other relief the Court deems just.

Dated: August 22, 2025

Respectfully submitted,

**COBB CHAUCER PLLC**

s/ Jeremy J. Cobb
Jeremy J. Cobb (#316441)
400 South Fourth Street, Suite 401-232
Minneapolis, Minnesota 55415
(763) 516-6231
jjcobb@umich.edu

*Counsel for Plaintiff Trai Ngoc Nguyen*

---

[45] § 1692k(a)(1).
[46] § 1692k(a)(2)(A).
[47] § 1692k(a)(3).

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF MINNESOTA         )
                                  ) ss.

COUNTY OF RAMSEY         )

        Pursuant to 28 U.S.C. § 1746, the undersigned Plaintiff, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

        1.      I have read the Complaint, and to the best of my knowledge, information, and belief formed after reasonable inquiry, believe that all facts asserted therein are true;

        2.      each cause of action asserted in the Complaint is supported by fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law;

        3.      the instant action is not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, but is brought in good faith solely for the purpose of obtaining the relief sought in the Complaint; and

        4.      any attached exhibit is a true and correct copy of the original, and except for appropriate redactions or annotations, has not been altered, changed, modified, or fabricated. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of August, 2025.

                                       Trai Ngoc Nguyen
                                      Plaintiff